**Burton ANTOINE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 02–CV–10354–MEL.**

United States District Court,
D. Massachusetts.

April 25, 2002.

**116**

John D. Himmelstein, Boston, MA, for plaintiff.

Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Burton Antoine petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a final administrative order of removal by the Board of Immigration Appeals (BIA). The government moves to dismiss Antoine's petition for lack of subject matter jurisdiction and failure to state a claim. Antoine, in turn, moves to stay or vacate the removal order, invoking Article III of the United Nations Convention Against Torture (Torture Convention).

Antoine's motion is denied. The government's motion is granted.

### I.

Antoine, a native and citizen of Haiti, came to the United States on March 17, 1984, at the age of six. Antoine is now twenty-four years old, and due to a 1998 conviction for distributing a Class B controlled substance, Antoine faces a removal order pursuant to sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA) as amended, as an alien convicted of an "aggravated felony" and as an alien convicted of a controlled substance offense.

Having lived here for eighteen years, Antoine and his family have developed strong roots in the United States. Since the age of six, Antoine has lived in Cambridge, Massachusetts, and he attended and graduated from Cambridge public schools. There is evidence indicating that Antoine suffers from a mild to moderate degree of mental retardation: he graduated from the special education program at Cambridge Rindge and Latin High School, and his intelligence quotient (I.Q.) was determined to be in the range of 68 to 80, with a particularly low verbal score of 59.

During the removal proceedings, Antoine testified that he has never returned to Haiti since he entered the United States at six years of age, that he has four brothers and three sisters in the United States, and has no family in Haiti. Antoine's mother, Marie Antoine, also testified at the removal hearing. She stated that her son will die if he is deported to Haiti because there is no one there to take care of him. One of Antoine's past attorneys has similarly argued that there is strong likelihood that Antoine, if deported, will likely die in Haiti because "he does not have the ability to survive alone in a notoriously unstable nation like Haiti." (Letter from Robert Curtis, 4/10/02).

## II.

Antoine does not challenge his conviction, which provides the basis for the government's order to remove him to Haiti. However, he does attack the removal order as a violation of Article III of the Torture Convention. Generally, his Torture Convention claim relies on newspaper clippings and Human Rights groups' reports about human rights violations in Haiti. Specifically, Antoine points to the facts of his life—mild mental retardation, lack of family or other social ties to what is for him a foreign country—and asks this court to read the meaning of torture broadly in the name of human rights.

Antoine moves to stay or vacate the removal order on the contention that the Immigration Judge abused his discretion by not giving due weight to the evidence that he offered at his removal hearing. He argues that the Immigration Judge improperly found his drug conviction constituted a "serious crime" under the INA, and that the Immigration Judge disregarded the evidence presented that he has a low I.Q. and lacked a prior criminal record. Antoine contends that in spite of the evidence showing his lack of ties in Haiti and his mild mental retardation, the Immigration Judge refused to consider that it was likely Antoine would die as a result of deportation.

The government moves to dismiss Antoine's petition for lack of subject matter jurisdiction for failure to state a claim upon which relief may be granted. (Fed. R.Civ.P.12(b)(1) and (6)). The government stresses that Antoine's conviction for distributing a Class B narcotic, by definition, renders Antoine an aggravated felon under section 101(a)(43)(B), U.S.C. § 1101 of the INA. Moreover, the government contends that Antoine's petition does not advance colorable claims of legal error or pure questions of law for this Court to determine, as is required in section 2241 petitions. The government underscores the fact that district courts have jurisdiction over habeas petitions asserting constitutional or statutory error, but not over discretionary challenges like those made by Antoine.

The government notes that Antoine does not dispute any of the facts relied upon in determining his deportability. The government asserts that Antoine's petition, instead, attempts to effectively create a forum to appeal the BIA's discretionary decisions rather than legal decisions. This, according to the government, is beyond the authority of the district courts in reviewing applications for habeas corpus. For support, the government relies on *Sol v. INS,* 274 F.3d 648 (2d Cir.2001) (limiting habeas corpus review of deportation orders made in violation of constitutional laws or treaties). As to the Torture Convention argument, the government reiterates the findings of the Immigration Judge who found, "not one scintilla or iota of evidence to establish that [Antoine's] removal to Haiti will subject him to torture at the hands of the Haitian government or

any agents thereof." (Oral Decision, Immigration Judge, 8/6/01, at 7).

### III.

The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, ratified by the United States Senate on October 21, 1994, was deposited with the United Nations by President Clinton that day, and became effective one month later, on November 20, 1994. *See* 34 I.L.M. 590, 591 (1995); Regulations Concerning the Convention Against Torture, 64 Fed.Reg. 8478, 1999 WL 75823 (1999); *see also Soto v. Ashcroft*, 2001 WL 1029130 *1, *6 (S.D.N.Y.2001). Article III of the Torture Convention provides:

> 1. No State party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.
>
> 2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations, including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

Torture Convention, Art. III, 23 I.L.M. 1027, 1028 (1984).

■ Invoking this treaty, Antoine seeks to stay or vacate the removal order. The Torture Convention regulations provide, in pertinent part, that "the burden of proof is on the applicant for withholding of removal . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). According to the regulations, the evidence to be considered in weighing the facts, includes evidence of past torture inflicted upon the petitioner, evidence of mass violations of human rights within the country to which he will be deported—in this case, Haiti, and other relevant information regarding conditions in the country of removal. 8 C.F.R. § 208.16(c)(3)(i)–(iv); *see also Thavarajah v. District Director, INS*, No. 99–4120, 210 F.3d 355.

Antoine's Torture Convention claim draws life from these facts: he has no family ties, friends, acquaintances, or other support network in Haiti; he is mildly retarded; he has not been in Haiti since 1984 when he was six years old; and he fears for his life in a country infamous for violence and instability. I agree with Antoine's past attorney, Robert Curtis, who forcefully states that deportation in this case could amount factually to torture. The attorney eloquently advocates:

> My personal acquaintance with Burton [Antoine] has lead me to believe that he does not have the ability to survive alone in a notoriously unstable nation like Haiti. At risk of sounding overly dramatic, it is my belief that, if Burton is deported, he will have effectively been given a death sentence for possibly having participated in the sale of twenty dollars worth of drugs to an undercover police officer. This unjust result should not come to pass and, as such, I am happy to express my support for Burton. In my opinion, Burton presents a minimal threat of harm—if any at all—to the United States and its people. His deportation under the circumstances simply cannot be justified.

(Letter from Robert Curtis, 4/10/02).

The letter's author soundly questions whether the government's removal of Antoine will frustrate rather than realize justice. The answer to that question appears to be "yes" under the circumstances of Antoine's life: justice will not be served in removing Antoine. However, in spite of

the tragic consequences of removal, given the rigid immigration laws of this country, and the validity of Antoine's prior conviction, the removal order cannot be vacated unless Antoine could meet the standards laid out by the Torture Convention by showing that it is more likely than not that he would be tortured if removed to Haiti. Here, the Immigration Judge unequivocally found that Antoine had offered "not one scintilla or iota of evidence" to establish that his removal to Haiti will result in torture at the hands of the Haitian government or any agents of the Haitian government.

District courts apply what is commonly known as the "substantial evidence" test when reviewing section 2241 habeas petitions, which challenge INS factual determinations, like Antoine's petition. Under this deferential standard, reversal of an INS factual determination is proper only if no reasonable factfinder could have failed to find that it is more likely than not that the petitioner will be tortured. Under this stringent standard, Antoine must submit "substantial evidence" that he would be tortured upon return to Haiti.

The Torture Convention defines "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted." (Torture Convention, Art. III, at 20). In order to make a prima facie showing of torture, a petitioner must offer specific showings that he or she will be subject to mistreatment by a public official or other person acting in an official capacity. In short, generalized fears of torture are not sufficient; instead, Antoine must offer specific evidence showing that he would be subject to torture by a public official in Haiti or at the instigation or with the acquiescence of such an official. Antoine has no such evidence, and therefore, his motion to stay or vacate the removal order is denied, and his petition must be dismissed for failure to state a claim upon which relief may be granted.

At this time, there is no legal refuge for Antoine in the Torture Convention or elsewhere. Individuals facing Antoine's terrifying future life in Haiti have no recourse in the courts, whose hands have been tied by Congress's stringent immigration laws, as executed by the INS.

*IV.*

Antoine's petition under section 2241 is dismissed, and his motion to stay or vacate the removal order is denied. The government's motion to dismiss is granted.

It is so ordered.